No. 19,373.

TABITHA STUMPFF et al., *Appellants*, v. LIZZIE KAECHLER et al., *Appellees.*

SYLLABUS BY THE COURT.

DEEDS—*In Escrow—Delivery after Grantee's Death—Effective Delivery.* A finding of fact that certain deeds of real estate were delivered by the grantor approved on the authority of the decision in the case of *Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12, and authorities there cited.

Appeal from Johnson district court; JABEZ O. RANKIN, *judge.* Opinion filed April 10, 1915. Affirmed.

*J. W. Parker*, and *Charles C. Hoge*, both of Olathe, for the appellants.

*John T. Little*, *C. B. Little*, both of Olathe, *Edwin S. McAnany*, and *Maurice L. Alden*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for the partition of land among the heirs of Irvin Coker, deceased. Before his death Irvin Coker made deeds of the real estate in question, which were not satisfactory to some of his

children. The claim was the deeds were not delivered, and hence that title passed to the heirs according to the statute of descents and distributions. The court stated, among others, the following findings of fact and conclusions of law:

"Irvin Coker was the owner of the 80 acres described in plaintiffs' petition, and lived upon the same for many years. Said Coker died November 2nd, 1913.

"Sometime in August, 1913, said Irvin Coker made a will in which he divided up the land in question giving certain specified portions to his various heirs.

"In October, 1913 said Coker became dissatisfied with the will and consulted with Doctor Chase as to what was the best method to pursue in view of the way he desired to dispose of his property, and Doctor Chase advised Irvin Coker to make deeds. In said talk said Coker also stated that he wanted his son Charles to have the ten acres of land with the buildings upon it, and that he wanted Lizzie (meaning Lizzie Kaechler) to have one of the best ten acres. The will which said Coker had drawn provided that these two should have larger portions than certain other ones of his children.

"On October 15, 1913 said Irvin Coker called in E. F. Kiser, a Notary Public, and requested him to draw deeds, and under the direction and at the request of Irvin Coker said Kiser drew nine deeds, which were executed by the said Irvin Coker and acknowledged before the said Kiser. Said deeds covered the entire tract of land owned by said Coker.

"After the deeds were executed and acknowledged said E. F. Kiser, the Notary Public, asked Irvin Coker what he should do with the deeds, and said Coker replied 'give them to Charlie and he to take care of them and hand them to them at my death.' Irvin Coker's son Charles was present at the time that Irvin Coker made this remark, and at this time said Kiser put the deeds in an envelope and handed them to Charlie. Charles Coker took the deeds and kept them in his personal possession for several days and then went to the bank at Shawnee, rented a box in the bank and placed said deeds in the bank where they remained until the death of Irvin Coker. After the death of Irvin Coker Charles Coker, went to the bank, took out a part of the deeds, retained his own deed, and had the

same recorded in the office of the Register of Deeds of Johnson County, Kansas, and delivered three of the deeds direct to the grantees named therein, and gave the five remaining deeds to the cashier of the bank and directed him to notify the grantees to come and get them. Said five deeds have ever since been retained by the cashier of said bank.

"I find that it was the intention of Irvin Coker at the time said deeds were made to divide his real estate as the same was described and conveyed in the said deeds, and that he intended to convey the respective portions of his estate as provided in said deeds and make delivery thereof.

"I conclude that the deeds to the four contesting defendants were legally delivered."

It has been declared many times by this court that the question of delivery is one of intention to be determined from all the facts and circumstances. The trial court is required to draw the inference, and its conclusion will not be disturbed unless manifestly wrong. In this case a will which could take effect only after the death was destroyed, and deeds capable of taking effect at once were substituted as a means of distributing the grantor's land. The deeds were ordinary warranty deeds containing a present grant, but reserving to the grantor possession and control so long as he might live. This reservation was meaningless unless title vested at once in the grantees. The grantor directed the notary, who prepared the deeds, to give them to a third person, so far as eight of the deeds were concerned, and it is clear that the nine deeds were to be treated alike. This delivery was unconditional so far as it related to the grantor's control of the instruments. They were not to be placed with the grantor's other papers or to be retained within his dominion, or to be taken care of for him. Nothing whatever was said indicating a right to recall the instruments, and the depositary was expressly directed to deliver them to the grantees at a specified time. After the deeds passed out of the grantor's possession he

neither claimed nor exercised any right to them. The result is the grantor's words and acts show a purpose to devest himself of title and are inconsistent with any other intention. (*Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12, and authorities cited in the opinion.)

The judgment of the district court is affirmed.