No. 37,015

A. H. James, Administrator with the Will Annexed of the Estate of Henry A. Hall, deceased, *Appellant*, v. Alice W. Hayden, Gladys M. Smith, J. E. Conklin and De Ver Tilton, *Appellees*.

(188 P. 2d 664)

Opinion filed January 24, 1948.

*Fred Emery* and *N. J. Ward*, both of Belleville, were on the briefs for the appellant.

*Fred Swoyer*, of Belleville, and *R. V. Denney*, of Fairbury, Neb., were on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to set aside a deed. Judgment was for the defendants. Plaintiff appeals.

The petition alleged that plaintiff was the administrator of the estate of Henry A. Hall, deceased. It described an eighty-acre tract of land and alleged that during his lifetime Hall made an instrument called a warranty deed purporting to convey it to Alice W. Hayden, one of the defendants, but that the deed was never delivered during the lifetime of Hall, and that after his death the defendants, Hayden and Conklin, conspired to claim delivery of the deed to Alice during Hall's lifetime and to assert title thereto and that pursuant to such conspiracy they wrongfully obtained possession of the deed and caused it to be recorded on November

26, 1945; that since Hall's death Conklin had been an agent for Alice and the things done by him were done as her agent; that after the deed was recorded Alice made a deed conveying the real estate in question to Gladys M. Smith; that this deed was made for the purpose of pretending to place the title of the real estate in Gladys M. Smith and to prevent the plaintiff from obtaining possession of it. The petition alleged that another defendant, De Ver Tilton, was in possession of the real estate as a tenant of the defendants.

There was a second cause of action wherein plaintiff set up the same facts and asked for an accounting of the rents. Defendant, Alice W. Hayden, in her answer admitted that Hall during his lifetime made an instrument conveying the land in question to her, but alleged that it was delivered to her during the lifetime of Hall and was dated February 12, 1930. She also alleged that about the 8th of April, 1946, she sold the real estate to Gladys M. Smith for a valuable consideration and executed a warranty deed therefor. She prayed that plaintiff take nothing by the action.

In a cross petition Alice alleged that during the year 1945, and for many years prior thereto, she was the owner of the real estate described and hence was entitled to the rents and profits from it for 1945; that in 1945 she received as rental for the place 281 bushels of corn and that on March 30, 1946, the plaintiff took possession of all the personal property of Hall, including this corn, and sold it for $287, and converted the proceeds to the estate of Hall, deceased. In her cross petition she asked that this be returned to her.

Gladys M. Smith in her answer admitted the allegations about the execution by Hall of the warranty deed to Alice W. Hayden and alleged that she bought the land in question from Alice for a valuable consideration. She asked that her title be quieted.

Conklin in his separate answer admitted the death of Hall and that the plaintiff was executor of his estate; that Hall gave the deed in question to Alice; that it was recorded and that Alice later sold the property in question to Gladys M. Smith.

The plaintiff in his reply admitted that he took possession of the corn referred to in Alice's cross petition and said it was sold with the consent of Alice as a part of Hall's estate.

General denials were filed by way of reply to the other pleadings.

Shorn of unnecessary verbiage for our purposes the petition

alleged that Hall had executed a deed to Alice but had never delivered it to her during her lifetime; that Alice had obtained possession of the deed after Hall's death and put it on record. Alice claimed the deed had been delivered to her in Hall's lifetime.

The court made exhaustive findings of fact. It recited first that the sole issue was whether the deed from Henry to Alice as of February 12, 1930, was delivered to her or for her in the lifetime of Hall so as to give force and effect to it.

The court recited in its findings of fact that Hall obtained title to the eighty by descent from his wife; that he had absolute title to the eighty acres with which we are concerned and a life estate in the adjacent eighty with the remainder to his two daughters, and that he had conveyed the eighty acres with which we are concerned to Alice because of some difficulty between himself and his two daughters.

The court found that Hall at the time of making the deed on February 12, 1930, executed an instrument, as follows:

"To Mr. Charles W. Yoder,

"Narka, Kansas.

"The undersigned, Henry A. Hall, has and does under this date deliver into your possession, a warranty deed executed by him in favor of Alice W. Hayden, and covering the west half of the southwest quarter (W ½ SW ¼) of section 10, in Township 1, South, of Range 1 west of the 6th P. M., in Republic County, Kansas, and which deed you will hold in your possession until the date of my death and promptly after the date of my death, you are hereby authorized and instructed to deliver such deed to Alice W. Hayden.

"There are no reservations or limitations with respect to said deed or its delivery, or your instructions and duties, other than those set forth in this writing.

"Dated this 12th day of February, 1930.

"Henry A. Hall."

The court further found that Yoder retained possession of the deed and the letter until November 2, 1943, when he died; that Hall on July 2, 1934, made a will leaving all his property to Alice; that he died November 23, 1945, at the age of eighty-six; that the will was duly admitted to probate and no question had been raised as to its validity; that sometime following the death of Charles W. Yoder in 1943, his son Cedric Yoder discovered the deed and depository instructions and delivered them into the custody of Hall and Alice, or one of them; that at the time of Hall's death they were in the residence occupied by him and his housekeeper, Alice W. Hayden.

The court pointed out the evidence as to the actual possession of the deed was somewhat limited but that within an hour or so after Hall's death Alice stated that his will and the deed which gave her all his property were in there, pointing toward the bedroom which Hall had occupied for years and in which there was a dresser, in the drawers of which he kept his jewelry and papers; that later in the same day she came from upstairs of the house and delivered the deed to Conklin, a banker, who recorded it and caused the will to be admitted to probate; that following Hall's death Alice assumed control of the premises and during the 1946 season received corn rentals in the sum of $372.99; that Alice was a cousin by marriage of Henry A. Hall and came to his house sometime in the year 1928 and remained with him as a companion and housekeeper until his death on November 23, 1945; that he had asserted on various occasions that Alice would receive all his property at his death; that following the execution of the title of the deed, to which reference has already been made, Hall exercised control of the real estate in question by paying the taxes and insurance premiums and generally made use of the premises; that during the same period Alice so acted as to indicate her claim of ownership by seeking to control in part the settlement of an insurance loss claim on improvements and certain cropping features of the cultivated land and by asserting the land in question had been deeded to her by Hall, the latter claim being largely asserted by her immediately following Hall's death; that Alice was seventy-seven years of age on April 25, 1947, and while a housekeeper for Hall she applied for and received county aid, which was based on her claiming no resources and her need of assistance; that between Alice and the daughters of Hall there was an unfriendly attitude; that Alice probably possessed $1,500 at the death of Hall, represented by a joint bank account she held with Hall.

The court made the following conclusions of law:

"CONCLUSIONS OF LAW

"From the foregoing conclusions of fact the Court concludes as a matter of law:

"1. There was a valid delivery of the deed in question during the lifetime of Henry A. Hall.

"2. The delivery of such deed in escrow resulted in vesting title in Alice W. Hayden to the real estate therein described as of the time it was so deposited.

"3. The control of the premises by Henry A. Hall and his appropriation of the rents and income therefrom following his execution, acknowledgment and escrow delivery of said deed was not inconsistent with, and it did not serve

to affect or defeat the passing of title to and vesting the same in Alice W. Hayden as above concluded.

"4. The surrender of possession of said escrow deed to Henry A. Hall or to himself and Alice W. Hayden jointly by the son of the escrow holder prior to Hall's death did not affect or change the legal result of its delivery in escrow in the first instance.

"5. The statements made by and the conduct of Alice W. Hayden, as set forth in the conclusions of fact, which tended to indicate to some extent non-ownership of the real estate in question by her, are not sufficient to defeat or serve to overcome the presumption as to valid delivery or the other facts as to delivery as the court has found to exist under the evidence in this case.

"6. The evidence is insufficient to overcome the presumption of rightful possession of the deed in question by Alice W. Hayden, even if her answer be construed as contended for by plaintiff as alleging actual delivery to her during the lifetime of the grantor.

"7. The Court construes the answer of Alice W. Hayden as to delivery of the deed in question to her to be such that she could rely, either upon the escrow delivery, or upon actual delivery after its execution to her by the grantor. This is made evident and proper by the fact that no motion was directed against the answer to make definite and certain with reference to the character of the delivery she relied upon, and in that the plaintiff failed to seek to have her elect after proof was offered tending to show both a delivery in escrow and personal delivery to her.

"8. Under all of the conditions and circumstances shown by the record it is considered and held by the Court that, if legally necessary to uphold the conclusions stated, that there was a valid delivery of the deed by reason of its deposit in escrow, the answer of the defendant Hayden will be deemed amended to conform to the proof offered and admitted upon the trial.

"9. Judgment should be entered in favor of all the defendants denying relief to the plaintiff and with costs against him."

Based upon the foregoing conclusions of fact and law, judgment for costs was ordered against the plaintiff. Defendant Hayden's cross petition was dismissed for lack of jurisdiction.

The plaintiff filed a motion for a new trial and to set aside the conclusions of law and for new findings of fact.

At the hearing of the motion for a new trial the plaintiff offered an affidavit of counsel that after the trial of the case he had learned that the presiding judge of the trial court had represented Hall in 1930 at the time of making settlement with the two daughters and that the presiding judge had also drawn the deed from Hall to Alice and the instructions to Yoder, to which reference has been made. This situation was called to the attention of the trial court on the hearing of the motion for a new trial, and was one of the grounds upon which plaintiff asked the presiding judge to grant a new trial and to disqualify himself to hear the case on the second trial.

The presiding judge stated that the matter of disqualification was first called to his attention after the hearing had been completed and the findings of fact and conclusions of law had been entered. He stated that he had no recollection of having represented Hall in the matter to which reference has been made, and that the events of the trial did not serve to bring to mind any such until a letter was presented to the court written by the presiding judge, which upon examination was found to relate to the matters in question. The presiding judge found that he had no knowledge or memory of any of the facts that had been brought out in the hearing; that he was nowise conscious of any bias or prejudice in the matter and that his conclusion and decision were based upon the evidence under consideration. He stated that had the matter been called to his attention prior to the trial it is very likely he would have voluntarily stepped aside, but that since he was not presented with them until after the trial, and since the conclusions of law and decisions based thereon were given after a fair and impartial consideration of the evidence, the decision should stand.

All the other motions of the plaintiff were overruled.

The plaintiff appeals and assigns some sixteen specifications of error.

The first specification is that the court erred in finding that the conveyance and escrow agreement were ever delivered by Hall to Charles Yoder. There was no evidence of anyone who saw him deliver the deed. There was, however, evidence of circumstances from which a reasonable conclusion could be drawn that such a delivery was made.

The next specification argued is that the trial court erred in finding that sometime after the death of Charles Yoder, his son, Cedric, delivered the conveyance to Hall or Alice or both of them. The same answer may be made to this argument as was made to the above.

The next specification argued is that the trial court erred in finding that Alice while she lived on the property with Hall and shortly after his death acted so as to clearly indicate her claim of ownership. There was ample, competent evidence to support this finding.

The next specification is that the trial court erred in not finding Hall and Alice treated the deed as being under Hall's exclusive control prior to his death and as not being delivered prior to that time, either to her or to a third person, for her since the evidence

so showed. As to the matter of control, there was evidence from which the trial court might well have concluded that the deed was in the dresser in Hall's room when he died. This evidence was not absolutely conclusive, however. Moreover, the fact that the deed was in the dresser in his room when he died is not inconsistent with a finding of joint control. Alice had access to every room in the house, including Hall's bedroom. The fact that the deed was in that particular dresser when Hall died, if such were the case, is not at all inconsistent with a finding of joint possession under all the surrounding facts and circumstances. As to the delivery of the deed to a third person for her, a finding that the deed was not delivered to Charles Yoder for her would have been in direct conflict with the evidence.

The next specification argued is that the trial court erred in not presuming nondelivery since the deed was in the exclusive possession of Hall at his death. We have just demonstrated that from all the facts and circumstances a reasonable conclusion could be drawn that the deed was not in Hall's exclusive possession at the time of his death. In other words, the evidence did not compel a finding that the deed was in Hall's exclusive possession at the time of his death.

The next specification is that the trial court erred in not holding that the sole issue before the court was the question of actual delivery by Hall to Alice during Hall's lifetime. This will be considered in connection with the next specification, which is that the court erred in holding that alternatively the court could find either actual delivery to Alice during Hall's lifetime or delivery in escrow to a third person to be delivered to her, and upon such holding base a valid delivery to her. What happened was this: The plaintiff alleged no delivery. Alice answered pleading delivery, whether delivery direct or in escrow not alleged. There was no motion to compel the defendant to make more definite and certain leveled at the answer. Hence it must be given a liberal interpretation in favor of the pleader.

The trial court after hearing the evidence and making the findings of fact, to which reference has already been made, made amongst others the following conclusions of law, which for convenience sake will be again set out, as follows:

"6. The evidence is insufficient to overcome the presumption of rightful possession of the deed in question by Alice W. Hayden, even if her answer be

construed as contended for by plaintiff as alleging actual delivery to her during the lifetime of the grantor.

"7. The Court construes the answer of Alice W. Hayden as to delivery of the deed in question to her to be such that she could rely, either upon the escrow delivery, or upon actual delivery after its execution to her by the grantor. This is made evident and proper by the fact that no motion was directed against the answer to make definite and certain with reference to the character of the delivery she relied upon, and in that the plaintiff failed to seek to have her elect after proof was offered tending to show both a delivery in escrow and personal delivery to her.

"8. Under all of the conditions and circumstances shown by the record it is considered and held by the Court that, if legally necessary to uphold the conclusions stated, that there was a valid delivery of the deed by reason of its deposit in escrow, the answer of the defendant Hayden will be deemed amended to conform to the proof offered and admitted upon the trial."

Plaintiff argues that these are two inconsistent positions and that defendant should have been compelled to rely either on actual delivery to her or on delivery to an escrow agent for her. We are unable to follow plaintiff in this argument. What the evidence does disclose is a normal situation. The trial court was justified in finding a delivery of the deed and escrow agreement to Yoder. The last paragraph of the letter of instruction should be noted. It said "There are no restrictions or limitations with respect to said deed or its delivery, or your instructions and duties, other than those set forth in this writing." Had Hall died while Yoder still had the deed and this letter there would have been no question about delivery by Hall to Yoder for delivery to Alice during his lifetime.

In *Stump v. Smarsh*, 153 Kan. 804, 113 P. 2d 1058, an analogous case reads:

"Where a deed is effectively delivered, the fact that it is handed back to the grantor for some purpose does not defeat the delivery." (p. 809.)

See, also, *Johnson v. Cooper*, 123 Kan. 487, 255 Pac. 1112. In this case we held that delivery by a deed to a third person to be delivered to the grantee on the death of the grantor, constituted a delivery of the deed during the lifetime of the grantor and that title passed immediately, enjoyment only being postponed until the death of the grantor. (See, also, *Norton v. Collins*, 81 Kan. 33, 105 Pac. 26, and *Nolan v. Otney*, 75 Kan. 311, 89 Pac. 690; and *Rust v. Rutherford*, 95 Kan. 152, 157 Pac. 800, where we quoted from and followed *Nolan v. Otney*, supra.) See, also, *Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12. In that opinion in considering an analogous case we said:

"We find no difficulty in reaching the conclusion that there was an effective delivery of the deed. There was a physical delivery to the depositary and to the beneficiary. There is no evidence, at least no convincing evidence, of any retention of control by the grantor. All of the circumstances tend to show a purpose on his part that there should be an immediate vesting of title in the grantee, the enjoyment alone being postponed until his death, and the intention of the grantor is recognized as the determining factor where the situation admits of doubt." (p. 251.)

Note these authorities all hold that under such circumstances title to the land passes at once on delivery of the deed to the escrow agent, enjoyment only being postponed until the death of the grantor. (See, also, *Hush v. Reeder*, 150 Kan. 567, 95 P. 2d 313.) In this case the court was confronted with the issues as we have heretofore outlined them. It is true a defendant cannot rely upon two inconsistent theories where the proof of one would require a disproof of the other. However, such was not the case here. The story as unfolded to the trial court was of a delivery of the deed in 1930 to an escrow holder for delivery to grantee at the death of grantor. The death of the person to whom the escrow delivery had been made and the liquidation of the bank of which he was an officer, caused the return of the deed to the grantee. If we disregard for a moment the evidence about the escrow holder, the admitted facts are sufficient to make reasonable a finding that the deed at the time of Hall's death was as much in possession of Alice as it was in the possession of Hall. There is nothing unreasonable about the theory that a man and woman living in the same house together for that many years would keep their personal papers together in the same place. Certainly no evidence presented by the plaintiff requires a contrary conclusion. If we consider the question of the return of the deed and escrow instrument to the grantee and the grantor there is still sufficient evidence to make it a reasonable finding that from that time on the conveyance was as much in the possession of the grantee as it was the grantor. Further than that, title passed at the time of the delivery of the deed to the escrow holder and enjoyment only was postponed. The evidence as to the later conduct of the parties pointed to that as a reasonable conclusion.

The next two specifications of error are that the court should have made a conclusion of law, as follows:

"The court is also asked to make a conclusion of law that since the deed was in the room of Henry A. Hall it was in his possession at his death, and the presumption is that it was rightfully there and not delivered during his lifetime.

"The court is also asked to make a conclusion of law, as follows: 'The deed in controversy was ineffectual as a conveyance at the time of the death of Henry A. Hall, and was wrongfully placed of record by the agent of Alice W. Hayden, and should be set aside.' "

The first of the above-proposed conclusions deals with a presumption that plaintiff asked the trial court to indulge to the effect that the fact that conveyance was in Hall's room at the time of his death raised a presumption that it was not delivered during his lifetime. As we have pointed out heretofore, if there is such a presumption it must yield to other facts and circumstances. The question of delivery is always one of the intent of the grantor and must be determined from all of the competent evidence. There was sufficient evidence in this case to warrant the trial court in reaching the conclusion it did as to delivery.

The next conclusion of law requested by the plaintiff has to do. with the merits of the entire controversy. Nothing more will be said here about this contention since it will be settled by the final outcome of the appeal.

The next specification of error argued was that the trial court erred in considering Alice's answer to be amended. This has to do with the eighth conclusion of law where the trial court held that if it was legally necessary to uphold the conclusion stated as to delivery to an escrow agent, Alice's answer would be deemed amended so as to conform to the proof. As we have heretofore demonstrated, it was not legally necessary for the answer to be amended. The answer as filed with no motion to cause it to be made more definite and certain permitted evidence of either one of the theories of defendant. In the conclusion we have reached it is not legally necessary for such amendment to be made.

The next two specifications of error may be considered together. One of them is that the trial court erred in not granting a new trial and the other is that the trial judge erred in not disqualifying himself before and after the trial of the case. We have examined the statement of counsel and the trial court on this issue. It is too bad that the witness for plaintiff did not tell counsel about the trial judge having represented Hall during his lifetime before the trial. We have no doubt that the trial judge would have disqualified himself had this been timely called to his attention. Judges do not like to sit on cases where they will be even remotely subject to the charge that they decided the case from other than the evidence

introduced. However, the matter was not brought to the attention of counsel so he could bring it to the attention of the trial court. We are satisfied that the trial court had forgotten all about any work that he did for Hall in connection with this matter. The real question, however, is whether the plaintiff was prejudiced on account of the fact that the judge of the court, before which the judge had done some work for Hall during the lifetime in connection with this matter. The question of prejudice lies largely in the discretion and judgment of the trial court. Where a judge is as frank as this one was we would be unwilling to say that he was prejudiced. Furthermore, there was not so very much disputed evidence in the record. The whole thing is largely a matter of conclusions to be drawn from admitted facts. We find no error in the action of the trial court in not allowing the motion for a new trial.

The next three specifications of error have largely been dealt with heretofore. They are that the trial court erred in denying the motion of plaintiff to set aside the findings of fact and for new findings, and in reaching each conclusion of law and in not setting aside the conclusions of law, and in deciding against the plaintiff and for the defendants.

The last specification of error is that the trial court erred in not holding that the issue before the court was the question of Hall's delivering the conveyance direct to Alice during his lifetime. We have heretofore dealt with all these specifications and found them to be not good.

There is a cross-appeal by defendant, Gladys Smith, because the court held that if the deed from Hall to Alice did not convey title to Alice then Gladys' answer to the evidence of plaintiff did not state a defense for her. It is not necessary for us to consider that cross-appeal because we are affirming the judgment of the trial court upholding the conveyance to Alice.

The judgment of the trial court is affirmed.